**TIX CORPORATION, Plaintiff**

**v.**

**LIVE IT LIVE, INC., and John Does 1–50, Defendants** [1]

**Live It Live, Inc., Counterclaimant**

**v.**

**Tix Corporation, Counterclaim-defendant**

**Case No. LA CV 11–00221–VBF**

United States District Court, C.D. California.

Filed 03/16/2015

Joseph Sedlacek, Mazis & Park, Irvine, CA, Peter E. Ferraro, The Ferraro Law Firm, Austin, TX, for Plaintiff.

Christopher M. Ferraro, Pro Hac Vice, Peter E. Ferraro, Pro Hac Vice, The Ferraro Law Firm, Austin, TX, J. Patrick Fleming, Case Knowlson LLP, Los Angeles, CA, for Defendant.

---

1. The complaint also asserted claims against Andrew Worthington. However, by Order issued June 14, 2011 (Doc 70), this Court granted Worthington's motion to dismiss the complaint as to him for lack of personal jurisdiction. Moreover, Worthington did not assert any counterclaims. Accordingly, Worthington is no longer listed as a party defendant in the caption, and Live It Live, Inc., is the only remaining party defendant.

**PROCEEDINGS (IN CHAMBERS): ORDER Directing Defendant Live It Live, Inc., to Show Cause in Writing, No Later than April 24, 2015, Why It Should Not be Sanctioned for Allegedly Failing to Comply with Court's Sept. 7, 2011 Arbitration Order (Doc 84) and With Purported Arbitration Agreement; Directing Plaintiff to Respond No Later Than Friday, May 22, 2015; Permitting Defendant Live It Live, Inc., to Reply No Later Than Friday, June 12, 2015**

HONORABLE VALERIE BAKER FAIRBANK, UNITED STATES DISTRICT JUDGE

The Pleadings in this Diversity Contract & Fraud Action. Plaintiff Tix Corporation ("Tix") initiated this action against Live It Live, Inc. ("Live It Live"), Andrew Worthington ("Worthington"), and John Does 1–50, by filing a complaint in Los Angeles County Superior Court in November 2010 ("Comp"), and defendants removed the case to this Court pursuant to 28 U.S.C. § 1441(b) (diversity jurisdiction) in January 2011. See Case Management/Electronic Case Filing System Document ("Doc") 1. Tix asserts five state-law claims against Live It Live: breach of contract (Comp ¶¶ 11–17), fraud by intentional misrepresentation (id. ¶¶ 18–25), fraud by making a promise without the intention to perform (Comp ¶¶ 26–34), fraud by negligent misrepresentation (id. ¶¶ 35–42), and open-book account (id. ¶¶ 43–45). Tix seeks compensatory damages "in excess of $995,000" plus consequential and incidental damages on count one, general damages "according to proof at trial" plus "special damages in excess of $995,000" and "exemplary and punitive damages according to proof at trial" on each of counts 2–4. On count five, Tix seeks $995,000 plus interest thereon from April 2010 onward. Tix also seeks attorneys' fees and costs of suit. See Doc 1 at 14–16 (Prayer for Relief).

Defendant Live It Live filed its amended answer to the complaint in June 2011, asserting eight affirmative defenses (failure to state a claim, no damages, failure to perform, failure of condition precedent, performance, repudiation, misrepresentation, and failure to mitigate damages). See Doc 74 ("Am Ans") at 7–8 ¶¶ 69–76. Simultaneously, Live It Live filed five counterclaims against Tix: breach of contract (Doc 75 at 2–3 ¶¶ 1–4); conversion (Doc 75 at 3 ¶ 5); fraud (Doc 75 at 3–4 ¶¶ 6–8); breach of the implied covenant of good faith and fair dealing (Doc 75 at 4 ¶¶ 9–10); and Misappropriation of Funds (Doc 75 at 4–5 ¶ 11). On the counterclaims, defendant Live It Live demands a jury trial and seeks "[r]easonable expenses in reliance of [sic] Counterdefendant Tix Corporation's performance of the contract", actual damages, "damages for loss of use of the money during the deprived period", exemplary damages, prejudgment and postjudgment interest, court costs, loss of net profits, and attorneys' fees. See Doc 75 at 5. Finally, Tix filed an answer to the counterclaims in July 2011, asserting many affirmative defenses. See Doc 76 at 2–6 ¶¶ 13–38.

On September 7, 2011, the Court stayed the case while the parties submitted to arbitration and ordered the parties to submit periodic reports. The Order stated as follows:

> Pursuant to the parties' stipulation, the parties are ordered to arbitration. The Court orders this action removed from its active caseload and administratively closed until further application by the parties or order of this Court. The parties shall file a Status Report within two weeks of the completion of arbitration. If the arbitration is not completed by March 6, 2012, the parties shall file a Status Report beginning on that date and continuing every other month until the arbitration is completed. *Failure* to file a required status report or *to com-*

*plete the arbitration may result in imposition of sanctions, including dismissal of this action.*

Doc 84 (emphasis added).

In May 2012, Tix filed a status report (Doc 93) stating that the arbitrator had granted the defendants' motion to postpone the arbitration to September 2012.

On July 16, 2012, defendant Live It Live filed a report stating that it had filed a petition for Chapter 7 protection in U.S. Bankruptcy Court for the Western District of Texas and accurately noting that further proceedings in this court involving Live It Live were therefore stayed per 11 U.S.C. §§ 363, 1201, and 1301.

Nothing in the record suggested, however, that Worthington had filed a petition for bankruptcy protection, so only the stay pending arbitration in effect in this case pertains to Worthington. On January 11, 2013, this Court issued an Order (Doc 95) directing the parties to file a joint status report no later than March 29, 2013. Plaintiff Tix alone filed a status report on March 28, 2013 stating as follows:

> The parties entered into a binding arbitration agreement on December 8, 2011. * * * The arbitrator ... continued the arbitration to September 12–14, 2012 in Las Vegas, Nevada ....
>
> On July 16, 2012, Plaintiff received a notice of stay due to Live It Live, Inc.'s Chapter 7 bankruptcy filing. Thereafter, Plaintiff was contacted by JAMS and was told that "JAMS was unable to proceed with the arbitration until and unless we are served with a written Order from the bankruptcy court authorizing such."
>
> Plaintiff's counsel responded to JAMS and indicated that the stay was applicable as to Defendant Live It Live, Inc., only and not [to] Defendant Worthington. JAMS indicated that defense counsel indicated they would not go forward without court order.

Plaintiff is considering pursuing Defendant Worthington in Texas and including a cause of action for breach of contract.

Doc 96 at 2 (some paragraph breaks added). Accordingly, in March 2014, this Court issued an Order which directed the parties to file a report apprising the Court of:

(1) the status of defendant Live It Live, Inc.'s bankruptcy proceedings;

(2) the status of arbitration proceedings between plaintiff and defendant Live It Live, Inc.;

(3) the status of arbitration proceedings between plaintiff and defendant Andrew Worthington;

(4) the existence and status of any other relevant proceedings in federal or state court involving one or more of the parties.

Doc 97 at 2. Instead of both parties ("the parties") filing a status report, only plaintiff did so. Plaintiff's April 11, 2014 status report stated in its entirety as follows:

> 1. *Procedural History*: Plaintiff filed its Complaint in Los Angeles [County] Superior Court on November 19, 2010. Defendants subsequently removed the action on January 7, 2011 to United States District Court, Central District of California. Pursuant to a stipulation of the parties to enter into binding arbitration, the Court stayed the action by order of September 7, 2011.
>
> 2. *Arbitration Status*: The parties entered into a Binding Arbitration Agreement on December 8, 2011. The arbitration hearing was scheduled to occur on July 11 and 12, 2012, at JAMS in Las Vegas, Nevada in front of the Honorable Stewart L. Bell (Ret.). The defendants recently made a motion to continue the arbitration date. Plaintiff opposed. Nevertheless, the arbitrator granted the motion and continued the arbitration to

September 12–14, 2012, at JAMS in Las Vegas, Nevada . . . .

On July 16, 2012, Plaintiff received a notice of stay due to Defendant Live It Live, Inc.'s Chapter 7 bankruptcy filing. Thereafter, Plaintiff was contacted by JAMS and was told that "JAMS was unable to proceed with the Arbitration until and unless we are served with a written Order from the bankruptcy court authorizing such." Plaintiff's counsel responded to JAMS and indicated that the stay was applicable as to Defendant, Live It Live, Inc., only, and not [to] Defendant Worthington. JAMS indicated that defense counsel stated they would not go forward as to Worthington until after the resolution of Live It Live, Inc.'s Chapter 7 and therefore, JAMS could not go forward without court order.

Plaintiff is still considering pursuing Defendant Worthington in Texas and including a cause of action for breach of contract.

3. *Defendant Live It Live, Inc.'s bankruptcy status*: Plaintiff's counsel attempted to contact defense counsel, Peter Ferraro, several times to find out the status of defendant's bankruptcy. Defense counsel left a voicemail on April 10, 2014, stating [that] he was getting on a plane, but did not leave a number where he could be reached.

On April 11, 2014, Plaintiff's counsel spoke with defense counsel's assistant who stated that they had received the Trustee's report of no distribution dated October 18, 2013 from Defendant's bankruptcy attorney, but was unable to verify final discharge.

Doc 97 at 1–2 (some ¶ breaks added). Thus, by Order issued September 22, 2014 (Doc 99), the Court admonished the parties that any future status report must provide a more conclusive and detailed update as to defendant Live It Live's bankruptcy

proceedings. That Order afforded the parties ample time for counsel to speak with each other and provide the Court with definite, conclusive information, unlike the previous status report's assertions regarding the bankruptcy, requiring them to file a joint report by October 31, 2014.

On October 31, 2014, the parties filed a response stating "The parties are in the process of settlement and dismissal of the entire action. Upon execution of the settlement agreement by the parties a Stipulation of Dismissal will be filed with the Court." Doc 100 at 2 ¶ 2. But the parties never filed any stipulation of dismissal of this action pursuant to a settlement or otherwise.

■ **Instead, on February 6, 2015, the parties filed separate and divergent status reports.** First, defendant filed what appeared to be a proposed joint stipulation of dismissal (Doc 102 at 1–2). But defendant simultaneously filed and attached a one-page notice to the Court, wherein defense counsel states as follows:

> On February 3, 2015 opposing counsel for the plaintiff emailed my secretary a proposed a proposed Joint Status Report and Stipulation of Dismissal, neither of which we can agree to because of inaccuracies and misrepresentations. On February 6, 2015 we spoke with opposing counsel and we could not agree. As such, we are hereby filing a separate Joint [sic] Status Report and a separate Stipulation of Dismissal which accurately reflect[s] the status of this case.

Doc 102–1. **In response to defendant's purported "joint" stipulation, the Court first notes** that a stipulation cannot be "joint" where, as here, the parties do not agree on the proper status and direction of the case, and one party (plaintiff Tix) refuses to join in its adversary's request to dismiss the case.

**Second, the Court notes defendant's assertion,** in the proposed *non-*joint stipulation of dismissal, that plaintiff "Tix Corporation's claim [sic] was listed on Schedule F in the bankruptcy proceeding and was discharged in bankruptcy." Doc 102 at 2 ¶ 4. The Court will direct the parties to explain their positions as to why the claims against defendant in Tix's complaint were or were not discharged in defendant's bankruptcy.

**Third, the Court notes defendant's admission,** in the proposed *non-*joint stipulation of dismissal, that "[t]he initial parties to this litigation TIX CORPORATION, LIVE IT LIVE, INC., and ANDREW WORTHINGTON entered into a binding arbitration agreement on December 8, 2011." Doc 102 at 2 ¶ 2; *see also* Doc 104 at 2 ¶ 2 (plaintiff Tix likewise notes that "[t]he parties entered into a Binding Arbitration Agreement in an attempt to resolve their issues.") and Doc 104–1 at 9–11 (plaintiff Tix submits copy of the Binding Arbitration Agreement signed by parties and counsel from December 7 through December 9, 2011). The Court will ask the parties to explain their positions as to whether there is a basis for this Court to compel defendant to participate in (and cooperate in facilitating the progression of) binding arbitration (1) on any of plaintiff Tix's claims against defendant and/or (2) on defendant's counterclaim against plaintiff Tix.

**Finally, also on February 6, 2015,** plaintiff Tix filed a status report. First, plaintiff Tix's report does not address defendant's apparent view that plaintiff "Tix Corporation's claim [sic, singular] ... was discharged in bankruptcy." Second, plaintiff Tix's report states the following with regard to its attempts to convince defendant to participate in binding arbitration:

1. **Procedural History.** * * * Pursuant to a stipulation of the parties to enter into binding arbitration, the Court stayed the action by order of September 7, 2011 and ordered the parties to arbitration by order of September 7, 2011. (Exhibit 1.)

2. **Arbitration Status:** the parties entered into a Binding Arbitration Agreement in an attempt to resolve their issues. The arbitration hearing was scheduled to occur on July 11 and July 12, 2012, at JAMS in Las Vegas .... Prior to the arbitration hearing, Defendant ... filed for bankruptcy protection staying the arbitration action. The bankruptcy proceedings regarding Defendant ... have now concluded. As discussed below, Plaintiff has made numerous attempts to proceed with the arbitration pursuant to this Court's September 7, 2011 Order, however, Defendant ... has refused to participate in this process.

3. **Defendant's Failure to Participate in the Arbitration as Ordered by This Court:** As discussed above, there were delays in proceeding with the arbitration pursuant to this Court's September 7, 2011 Order. These issues are now resolved. Pursuant to Plaintiff receiving notice of the conclusion of the bankruptcy proceedings and the lifting of the [statutory automatic bankruptcy] stay pursuant to that resolution, Plaintiff made numerous attempts to proceed with the arbitration pursuant to this Court's September 7, 2011 Order.

On December 22, 2014, Plaintiff sent correspondence to [defense] counsel regarding proceeding with the arbitration pursuant to this Court's September 7, 2011 Order. (Exhibit[s] 2 and 3.) In order to ease this Court's docket, Plaintiff even proposed dismissing this action without prejudice and proceeding exclusively under the arbitration agreement. (Exhibit 2.) As discussed below, Defendant ... would not agree to these issues.

On January 8, 2015, Plaintiff sent additional correspondence regarding the scheduling of the arbitration pursuant to this Court's September 7, 2011 Order. (Exhibit[s] 4 and 5.) Plaintiff has heard no reply from Defendant ... with regard to the scheduling of the arbitration. As discussed below, counsel for defendant ... has indicated that they have not decided whether they will agree to proceed with the arbitration that was ordered by this Court.

Pursuant to this Court's recent orders regarding this matter, Plaintiff sent a draft Joint Status Report to Defendant ... to file with this Court. (Exhibit 6.) Additionally, Plaintiff made further inquiries regarding the scheduling of the arbitration pursuant to this Court's September 7, 2011 Order. (Exhibit 6.)

Prior to filing this report, Plaintiff spoke with counsel for Defendant .... On February 6, 2015, Counsel for Defendant ... indicated that they would not agree to the draft Stipulation of Dismissal that was sent in December of 2014. Counsel for Defendant ... also indicated that they would not agree to the information contained in the draft Joint Status Statement. Counsel for Defendant ... indicated that they would not agree to scheduling an arbitration at that time. Plaintiff felt that agreeing to schedule an arbitration was a significant issue that should be addressed prior to filing any status statement to this Court. Counsel for Defendant ... indicated that they did not wish to put any information in the Joint Status Report with regard to scheduling arbitration and, therefore, suggested that the parties file separate status reports with this Court.

Doc 104 at 1–4. Plaintiff Tix concludes its status report by asking "that the Court set an Order to Show Cause regarding Defendant LIVE IT LIVE, INC.'s failure to proceed with the arbitration pursuant to this Court's September 7, 2011 Order, and take whatever other action this Court deems necessary." Doc 104 at 4 ¶ 4.

**The Court will grant plaintiff's request and order defendant Live It Live to show cause in writing, by a date certain, why it should not be sanctioned for allegedly failing to comply with the purported arbitration agreement between these parties.** *See, e.g., Freaner v. Valle*, 966 F.Supp.2d 1068, 1074 (S.D. Cal. 2013) (Janis Sammartino, J.) ("[T]his Court issued an Order to Show Cause Why Sanctions Should Not Be Imposed, requiring Freaner to explain why he had yet to commence arbitration within the generous deadline set by the Magistrate Judge."); *Yaqub v. Experian Info. Solutions, Inc.*, 2011 WL 12646340, *1 (C.D. Cal. June 10, 2011) (Valerie Baker Fairbank, J.) ("In light of the Court's order compelling arbitration above, the Court hereby sets an Order to Show Cause why the claims against Citibank and Home Depot should not be dismissed due to contractual arbitration ...."); *Davis v. CIGNA. Healthcare*, 2007 WL 1651248, *1 (N.D. Cal. June 5, 2007) (Teresa Goldner, M.J.) ("On February 1, 2007, the Court issued an order to Show Cause ('OSC') as to why the case should not be dismissed for Plaintiff's failure to comply with the Court's July 26, 2005 Order compelling the plaintiff to arbitrate her grievances, ....").

■ **The Court notes that "[t]he Federal Arbitration Act ('FAA') requires federal courts to stay judicial proceedings and compel arbitration if the claims are covered by a written and enforceable arbitration agreement."** *Friedman v. Guthy–Renker, LLC*, 2015 WL 857800, *3 (C.D. Cal. Feb. 27, 2015) (Wright, J.) (citing 9 U.S.C. § 3). The FAA embodies a public policy that generally favors the enforcement of arbitration agreements and calls on courts to resolve doubt about the scope of arbitration in

favor of arbitration, *see Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), and "Section 4 of the . . . Act . . . 'permits a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement' ", *Savetsky v. Pre–Paid Legal Servs., Inc.*, 2015 WL 604767, *2 (N.D. Cal. Feb. 12, 2015) (Conti, J.) (citing 9 U.S.C. § 4). "In deciding whether an arbitration agreement exists, courts 'apply ordinary state-law principles that govern the formation of contracts." *Friedman*, 2015 WL 857800 at *3 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

**At this juncture, the Court intimates no opinion** as to which State's law should govern the formation, enforceability, and interpretation of any purported written arbitration agreement between these parties; whether there exists an enforceable binding-arbitration agreement under that State's law; or whether either party has complied with any such agreement (and with the Court's September 7, 2011 Order) by making good-faith efforts to schedule, participate in, and advance arbitration proceedings.

### ORDER

**No later than Friday, April 24, 2015, Live It Live, Inc., SHALL SHOW CAUSE in writing why it should not be sanctioned for its alleged failure to comply with the parties' purported arbitration agreement.** Such sanctions may include, but are not necessarily limited to (1) a grant of judgment to plaintiff on the claims in its complaint against Live It Live, Inc.; (2) dismissal with prejudice of Live It Live, Inc.'s counterclaims against

plaintiff; and/or (3) an award of attorneys' fees and costs to plaintiff.

**No later than Friday, May 22, 2015, plaintiff SHALL FILE a response brief.**

**No later than Friday, June 12, 2015, defendant Live It Live, Inc., MAY FILE a reply brief.**

Defendant's opening brief and Plaintiff's response, as well as any reply brief by Defendant, **SHALL ADDRESS** these issues:

— which State's law governs issues of contract formation, enforceability, and interpretation;

— why there is or is not an enforceable arbitration agreement under that State's law;

— whether plaintiff's claims against Live It Live, Inc., were discharged in bankruptcy;

— whether any other factors preclude enforcing or counsel against enforcing such agreement;

— how the Court should proceed on Live It Live, Inc.'s counterclaims against plaintiff.

**IT IS SO ORDERED.**